NOT DESIGNATED FOR PUBLICATION

No. 123,539

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interests of L.W. and A.H.,
Minor Children.

MEMORANDUM OPINION

Appeal from Franklin District Court; ERIC W. GODDERZ, judge. Opinion filed October 1, 2021.
Affirmed.

*Jeffrey C. Leiker*, of Leiker Law Office, P.A., of Overland Park, for appellant.

*Kimberly Robinson*, assistant county attorney, and *Brandon L. Jones*, county attorney, for
appellee.

Before ARNOLD-BURGER, C.J., SCHROEDER, J., and WALKER, S.J.

PER CURIAM: The natural mother (Mother) of L.W. and A.H. (the children)
appeals the district court's termination of her parental rights. Both of the natural fathers'
parental rights were also terminated, but they do not participate in this appeal. Mother
argues the evidence did not support a finding of unfitness or that her unfitness was
unlikely to change in the foreseeable future. Mother also argues the district court abused
its discretion in finding the termination of her parental rights was in the children's best
interests. After a careful review of the record, we find no error. We affirm.

FACTS

In October 2018, the Kansas Department for Children and Families (DCF)
received a report claiming Mother's boyfriend, T.H.—who is the natural father of A.H.—

1

sexually abused L.W., Mother's other child. About 10 days later, T.H. engaged in a domestic altercation with Mother in the presence of L.W. The incident occurred at the maternal grandmother's (Grandmother) house. DCF received another report in which Ottawa police officers found Mother on the floor at Grandmother's house, passed out on a mattress with A.H. sleeping on her chest. Mother admitted to using methamphetamine three days prior.

In December 2018, the State filed two separate petitions to adjudicate L.W. and A.H. as children in need of care (CINC); the cases were consolidated for trial. At the temporary custody hearing in January 2019, Grandmother appeared, but the children's natural parents did not. The district court found the children should be temporarily placed in DCF custody; imposed a restraining order against T.H., prohibiting him from direct or indirect contact with L.W.; and ordered Mother and T.H. to submit to biweekly urinalysis (UA) tests. Mother failed to timely submit a UA, and when she did in February 2019, it was positive for amphetamines. The district court also ordered Grandmother to submit a UA, which was negative for all substances.

The children were placed by DCF with Grandmother from January 17, 2019, through April 1, 2019. The children were removed in April because of the condition of Grandmother's home and concerns Mother had been living there. DCF then placed the children in a foster home. DCF contracted the case to KVC Behavior Healthcare (KVC). The KVC case manager provided a court progress report in April 2019, which stated Mother failed to obtain employment and failed to provide documentation she had seen a substance abuse specialist at the Regional Alcohol and Drug Assessment Center (RADAC) or received a mental health evaluation as ordered by the district court.

In April 2019, the district court adjudicated both children as CINC and in May at the disposition hearing approved a proposed permanency plan of reintegration. The district court determined Mother needed to provide two clean UAs before she could visit

the children. The district court conducted a review hearing in July 2019, determined the children should remain in DCF custody, and modified the case plan goal to a dual plan of reintegration or adoption.

At the end of July 2019, KVC's progress report stated Mother had not visited the children or complied with the UA color code system. Grandmother, however, continued to visit the children biweekly. KVC reported Mother failed to make significant progress toward her case plan tasks to reintegrate the children and suggested reintegration was not a viable option.

In October 2019, the district court conducted a permanency hearing and found, with reintegration continuing to be a viable goal, the children should remain in DCF custody with a continued reintegration plan to include a concurrent goal of adoption. Mother's visitation time continued to be denied until she completed two consecutive, clean UAs. Mother provided two negative UAs, but then Grandmother tested positive for methamphetamine. Mother visited the children twice after submitting two negative UAs in October 2019 but, soon after, failed to show up for another UA, which led to a presumptive positive result and the denial of visitation with the children. KVC transferred the case to another contracting agency, TFI Family Services (TFI). At a permanency hearing in December 2019, the district court found reintegration was no longer a viable option. The State subsequently filed a motion requesting the district court find Mother unfit and terminate her parental rights or appoint a permanent custodian.

The children were removed from foster care and placed with L.W.'s paternal grandfather in December 2019. Around the same time, Mother received a letter from Mirrors, a substance abuse disorder treatment service, stating she missed three consecutive appointments without cancelling and would be administratively discharged unless she contacted the facility before January 14, 2020. Mother was discharged.

In January 2020, the district court conducted a hearing and continued the State's motion for a finding of unfitness and termination of parental rights. The case was continued multiple times under Kansas Supreme Court Administrative Order 2020-PR-016, effective March 18, 2020. In March 2020, the children were placed back in foster care as L.W.'s paternal grandfather could no longer adequately meet the children's needs. TFI prepared a court report in April 2020 and noted Mother was living with her new husband and another roommate in an apartment in Williamsburg. Mother did not provide TFI with a lease agreement for the apartment. The TFI case manager testified she had trouble contacting Mother and, therefore, was unable to perform a walk-through of the residence. TFI's recommendation remained termination of Mother's parental rights.

On June 10, 2020, the district court held a final hearing on the State's motion to terminate Mother's parental rights to L.W. and A.H. Emily Zwonitzer, a case manager at KVC, testified she was assigned to the children's case in March 2019. Zwonitzer explained the case was transferred to another KVC caseworker who later quit without notice. One or two weeks went by between the time the KVC caseworker quit and Mother learned the caseworker had quit.

Teri Drake Caruthers, a TFI permanency supervisor, began handling the case after it was transferred from KVC. Caruthers testified he was aware of the concerns about Mother as he had attended the permanency hearing in early October 2019 and received KVC's last court report. Caruthers explained Mother did not have appropriate housing for reintegration. A new TFI caseworker, Morgan Rubelmann, was assigned in November 2019.

Rubelmann testified Mother told her she had temporary employment but failed to provide documentation. Rubelmann noted TFI had a signed release for Mother's RADAC drug and alcohol assessment but was unable to access the file from the file room.

4

Rubelmann explained she could not monitor Mother's compliance with RADAC recommendations but could monitor mental health recommendations.

Mother testified she had recently signed up for smart recovery therapy online but had not been actively participating. Mother asserted COVID-19 affected her ability to work on her case plan tasks and alleged she unsuccessfully tried to reach out to her KVC case manager who had left the agency without notice. Mother had also stated in her RADAC assessment her new husband wanted nothing to do with methamphetamine but admitted on cross-examination she was aware he had a pending charge for possession of methamphetamine in Franklin County.

The district court found Mother unfit based on the following four statutory factors:

- K.S.A. 2019 Supp. 38-2269(b)(2)—conduct toward the children of a physically, emotionally, or sexually cruel or abusive nature;
- K.S.A. 2019 Supp. 38-2269(b)(3)—use of narcotic or dangerous drugs of such duration or nature as to render Mother unable to care for the ongoing physical, mental, or emotional needs of the children;
- K.S.A. 2019 Supp. 38-2269(b)(7)—failure of reasonable efforts by appropriate public or private agencies to rehabilitate the family; and
- K.S.A. 2019 Supp. 38-2269(b)(8)—lack of effort on the part of Mother to adjust her circumstances, conduct, or conditions to meet the needs of the children.

The district court made the following additional findings:

"There has been a consistent failure of the mother . . . to complete case plan tasks. Mother . . . [has a] presumption of unfitness due to the [children] being placed in out of home placement for over a year. Mother . . . [has] continued to use drugs. Mother

5

has had more than a dozen UAs since December 2019. She only took 2 UAs and both were positive for methamphetamine. All others she missed. Mother failed to follow through with drug treatment, and by her testimony today, she only did intake at Mirrors and had checked out an online treatment but had not yet started it. Mother does not have stable housing due to a walkthrough not being completed nor a lease provided to TFI. Mother . . . [does not] have a job. Mother . . . [has] not done [her] mental health treatment. Mother married [D.M.] with past and pending criminal charges for methamphetamine possession. Mother lied to the RADAC assessor regarding her husband's use of methamphetamine and her usage. Mother's husband does not have a driver's license. The [children were] removed due to drug usage, condition of home, and domestic violence. . . . Mother . . . had a lack of effort to adjust [her] circumstances; [Mother] did not maintain a reasonable visitation schedule with the [children] or contact with the agency; and [Mother] did not follow through with the permanency plan. Adoption/permanent custodian should be the only case plan goal."

The district court found Mother unfit, that her unfitness was unlikely to change in the foreseeable future, and terminated her parental rights, finding it was in the children's best interests.

I.    MOTHER WAS UNFIT.

Mother argues KVC and TFI did not help or provide reasonable efforts to rehabilitate and reintegrate her family, alleging she had up to five case managers who lost her reports and assessments, rendering her "unofficially charged to work the case without help from TFI." Mother contends the State failed to provide clear and convincing evidence she was unfit or her unfitness would not change in the foreseeable future.

The State responds Mother failed to challenge the district court's findings that:

- Mother's rights were terminated based on conduct toward her children of a physically, emotionally, or sexually cruel or abusive nature;

6

- Mother's use of intoxicating liquors, narcotics, or dangerous drugs rendered her unable to care for her children's ongoing physical, mental, or emotional needs; and

- KVC and TFI provided reasonable efforts and services to help Mother, but she failed to follow their recommendations.

A parent has a constitutionally recognized fundamental right to a parental relationship with his or her child. See *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *In re B.D.-Y.*, 286 Kan. 686, 697-98, 187 P.3d 594 (2008). Accordingly, parental rights for a child may be terminated only upon clear and convincing proof of parental unfitness. K.S.A. 2020 Supp. 38-2269(a); *Santosky*, 455 U.S. at 769-70; *In re R.S.*, 50 Kan. App. 2d 1105, 1113, 336 P.3d 903 (2014).

As provided in K.S.A. 2020 Supp. 38-2269(a), the district court must find "by clear and convincing evidence that the parent is unfit by reason of conduct or condition," making him or her "unable to care properly for a child" and the circumstances are "unlikely to change in the foreseeable future." In reviewing a district court's termination of parental rights, we view all the evidence in the light most favorable to the prevailing party to determine whether a rational fact-finder could have found it highly probable by clear and convincing evidence that parental rights should be terminated. *In re K.W.*, 45 Kan. App. 2d 353, 354, 246 P.3d 1021 (2011). In making this determination, we do not "weigh conflicting evidence, pass on credibility of witnesses, or redetermine questions of fact." *In re B.D.-Y.*, 286 Kan. at 705.

The district court relied on four statutory factors to find Mother unfit. Mother, however, does not argue the district court erroneously found her unfit under K.S.A. 2020 Supp. 38-2269(b)(2)—conduct toward a child of a physically, emotionally, or sexually abusive nature—and (b)(3)—use of intoxicating liquors or narcotic or dangerous drugs of such duration or nature as to render the parent unable to care for the ongoing physical,

mental, or emotional needs of the children. Therefore, Mother waives these issues on appeal. See *State v. Arnett*, 307 Kan. 648, 650, 413 P.3d 787 (2018) ("'An issue not briefed by an appellant is deemed waived or abandoned.'"). Even though Mother has waived these issues—and those findings by the district court, on their own, are sufficient for us to affirm the district court's termination of Mother's parental rights under K.S.A. 2020 Supp. 38-2269(f)—we will, in the interest of thoroughness, proceed to address the merits of the points Mother did brief. See *National Bank of Andover v. Kansas Bankers Surety Co.*, 290 Kan. 247, 280-81, 225 P.3d 707 (2010) (finding when district court provides alternative bases to support ultimate ruling and appellant fails to challenge validity of alternative bases on appeal, appellate court may decline to address appellant's challenge to district court's ruling).

A. *Reasonable efforts by appropriate agencies*

Mother focuses her efforts on appeal by challenging the district court's reliance on K.S.A. 2020 Supp. 38-2269(b)(7)—failure of reasonable efforts by appropriate public or private agencies to work toward reintegration of the children—in finding Mother unfit. Mother alleges KVC and TFI failed to help her rehabilitate her family and even lost relevant documentation about her required drug and alcohol assessments.

While it is true Mother had at least three case managers and KVC transferred her case to another agency, clear and convincing evidence supports the district court's finding both agencies provided reasonable efforts to help Mother work toward reintegration. As we have previously explained: "'The purpose of the reasonable efforts requirement is to provide a parent the opportunity to succeed, but to do so the parent must exert some effort.' [Citation omitted.]" *In re M.S.*, 56 Kan. App. 2d 1247, 1257, 447 P.3d 994 (2019).

Here, the agencies' efforts, although not perfect, were reasonable. Mother's case managers tried to remain in contact with her and, when Mother failed to respond, her case

managers reached out to Grandmother for updates. Mother apparently had poor cell phone reception and preferred communicating through text messaging. It was Mother's responsibility to call in daily to check whether she had to submit a random UA. Because Mother's preferred method of communication was through text message, her case managers sent her text messages when she was required to submit a UA. Mother consistently proved difficult to contact. The record shows KVC and TFI contacted, or tried to contact, Mother by phone and text messages with limited success from March 2019 through June 2020.

Mother now alleges she tried to contact her KVC case worker to no avail during the two-week period after that caseworker quit without notice. Mother's argument is unpersuasive. The children were in DCF custody—in out-of-home placement—and Mother should have been consistently communicating with the agencies from January 2019 until June 2020. Mother rarely visited the children. Interestingly, over the 18-plus months the children were in out-of-home placement, Mother now claims she was trying to work with and communicate with her case managers during a specific 2-week period when her case was essentially unassigned to a case manager.

Mother also alleges TFI lost her RADAC drug and alcohol assessment; however, the record does not fully support her allegation. Mother's last caseworker, Rubelmann, testified TFI requested and received the RADAC assessment, but she did not have the report with her when she testified. In fact, Rubelmann prepared and signed a court report in November 2019, indicating Mother provided a report she had completed a RADAC screening in July 2019 which listed no recommendations for treatment. This report is in the record on appeal. Mother later advised TFI she would schedule an appointment for an updated RADAC assessment because she subsequently had positive UAs. Mother received the updated RADAC assessment in October 2019 and provided the report to TFI. However, this assessment is not found in the record on appeal.

Mother argues none of her case managers conducted a walk-through of her home to determine whether she had stable housing. The district court heard the testimony about Mother's failure to cooperate. Rubelmann testified Mother never provided documentation of her housing, such as a lease agreement, and Rubelmann could not perform a walk-through of the residence because Mother failed to stay in contact with TFI. This court does not "reweigh the evidence, resolve evidentiary conflicts, or make witness credibility determinations." *In re B.D.-Y.*, 286 Kan. at 705. The district court found Rubelmann's testimony credible. Even though there were multiple case managers involved in Mother's case, her case managers tried to remain in contact with her and provide assistance. Reintegration requires effort on Mother's part, which was lacking. Even with the agencies' availability and willingness to help, Mother failed to use the agencies to achieve her reintegration tasks. Clear and convincing evidence shows KVC and TFI made reasonable efforts to assist Mother in rehabilitating her family and supports the district court's finding the agencies provided reasonable support.

B.    *Mother failed to adjust her circumstances.*

Mother next challenges the district court's finding of unfitness under K.S.A. 2020 Supp. 38-2269(b)(8) for lack of effort to adjust her circumstances, conduct, or condition to meet the needs of the children. Mother's claim is largely a continuation of her first point. She argues she tried to adjust her circumstances to meet the needs of the children but failed because she did not have sufficient assistance from KVC or TFI. Again, Mother claims she obtained stable housing and TFI failed to perform a walkthrough of her apartment. But at the termination hearing, Rubelmann testified she was unable to schedule a walkthrough of the apartment because she could not contact Mother. And Mother also failed to provide documentation, such as the lease agreement, to establish she had stable housing.

10

The district court specifically found Mother consistently failed to:

- complete case plan tasks;

- follow through with drug treatment;

- maintain a reasonable visitation schedule with the children;

- maintain contact with her case managers;

- adjust her circumstances to meet the children's needs;

- maintain employment;

- prove she obtained stable housing; and

- remain drug free.

The evidence, when viewed in the light most favorable to the State, is such that a rational fact-finder could determine it was highly probable by clear and convincing evidence that Mother was unfit to parent the children at the time of the termination hearing because she was unwilling to adjust her circumstances, conduct, or condition to meet the needs of the children, and her unfitness was unlikely to change in the foreseeable future. The evidence shows Mother made little to no progress during the 18-plus months her children were in out-of-home placement and supports the district court's finding she failed or refused to adjust her circumstances to meet the needs of the children.

II.     TERMINATION OF MOTHER'S PARENTAL RIGHTS WAS IN THE BEST INTERESTS OF THE CHILDREN.

Mother claims the record lacks evidence about the children's physical, mental, or emotional needs and the district court, therefore, abused its discretion in terminating her parental rights. The State responds with a limited argument the district court found the emotional, physical, and mental needs of the children would best be served by terminating Mother's parental rights based on the facts previously discussed.

11

Upon making a finding of unfitness of the parent, the district court must "consider whether termination of parental rights . . . is in the best interests of the child. In making the determination, the court shall give primary consideration to the physical, mental and emotional health of the child." K.S.A. 2020 Supp. 38-2269(g)(1). The district court makes the best-interests determination based on a preponderance of the evidence, which is essentially entrusted to the district court acting within its sound judicial discretion. See *In re R.S.*, 50 Kan. App. 2d at 1115-16. We review a court's best-interests determination for an abuse of discretion,

> "which occurs when no reasonable person would agree with the district court or the district court premises its decision on a factual or legal error. In determining whether the district court has made a factual error, we review any additional factual findings made in the best-interests determination to see that substantial evidence supports them. [Citation omitted.]" *In re R.S.*, 50 Kan. App. 2d at 1116.

The party asserting the district court abused its discretion bears the burden of showing such abuse of discretion. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106 (2013).

Here, the district court found Mother unfit, as discussed above, under K.S.A. 2019 Supp. 38-2269(b)(2), (3), (7), and (8). Mother's conduct and condition rendered her unfit and her unfitness was unlikely to change in the foreseeable future. The district court determined Mother was unfit as she was unable to show she had stable housing and employment and continued to test positive for methamphetamine. Mother was also unable to maintain a reasonable visitation schedule with her children while they were in out-of-home placement for 18-plus months. Mother failed to establish she could provide a safe environment for the children and remain drug free so she could properly provide and care for their needs. Mother has failed to show any abuse of discretion by the district court, and we observe no abuse of discretion when the district court found terminating

Mother's parental rights to L.W. and A.H was in their best interests, consistent with their physical, mental, and emotional needs.

Affirmed.